UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALEX M.M. RALSTON,<br><br>    Plaintiff,<br><br>    v.<br><br>SAN JUAN EXCURSIONS, INC.,<br><br>    Defendant. | Case No. 05-5308<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's Motion for Summary Judgment seeking dismissal of Plaintiff's maritime personal injury claims. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby grants San Juan Excursion's motion and dismisses Plaintiff's case for the reasons stated below.

**INTRODUCTION AND BACKGROUND**

The M/V ODYSSEY is a wooden motor yacht which had been converted for use in the whale-watching/wild life excursion business. Roger and Linda Hoff are the owners of the ODYSSEY which they leased to San Juan Excursions, Incorporated. Each spring, the ODYSSEY is broken out of winter berthage in Friday Harbor in preparation for the upcoming excursion season.

ORDER - 1

As a part of the spring 2004 preparations, the ODYSSEY needed some engine work, replacement of decking on the starboard side overhang and painting. Hoff was referred to a Port Angeles shipwright, Peter NewDay, to carry out the structural repairs. In order to conduct these repairs the ODYSSEY was moved to the Boat Haven Marina in Port Angeles.

While the NewDay repairs were being carried out, Hoff also arranged to have the ODYSSEY painted by Matt Kielmeyer. Painting of the wooden vessel was performed on an as-needed basis, and was conducted as at least once each year prior to the excursion season. Kielmeyer had painted the vessel the past several years. In order to prepare the vessel for painting it was necessary for the boat to be scraped, sanded, wiped down and chipped wood areas filled. To assist Kielmeyer with prepping the vessel for painting, Hoff employed two cousins, Matt and Alex Ralston.

The repairs to the starboard upper-decking being conducted by shipwrights NewDay and Roy Hamilton were a different project than the painting. Neither NewDay or Hamilton had any supervisory responsibility for Kielmeyer or the Ralston cousins. The shipwrights considered the painting and its prep work routine maintenance necessary to preserve the vessel's current condition. Hoff testified that sanding in preparation for painting is a part of annual boat maintenance on a wooden vessel.

On March 27, Alex Ralston and Matt Kielmeyer worked all day prepping the ODYSSEY's hull for painting. By the end of the day, the hull was nearly ready for paint. The next day, in mid-morning, Matt Ralston joined his cousin Alex aboard the boat. Before the cousins began work that day, Hoff explained to both Alex and Matt exactly what he wanted them to accomplish.

Matt Ralston recalls Mr. Hoff warning Alex and him that repairs were being conducted on part of the upper deck, and that if they wanted to go up there, which there was no need, to be extremely careful. The rail of the starboard side of the upper deck of the vessel had been removed

in the course of the repairs being performed by NewDay and Hamilton. The absence of the railing

ORDER - 2

was obvious. Hoff's instructions to the cousins were overheard several times by NewDay, who testifies that Alex Ralston was constantly reminded by Hoff not to go on the starboard side as there is no railing.

In the early afternoon of March 28, Hoff decided to separate the two cousins to improve work efficiency. Hoff took Alex Ralston into the vessel's forward salon where they put together a pail of supplies. Hoff then took Alex to the vessel's upper port sidedeck and pointed to the area where Alex was to prep for painting. Hoff specifically told Alex "whatever you do, do not go over to the starboard side. Stay away from the starboard side where Roy [Hamilton] and Pete [NewDay] are working." Notwithstanding these warnings, Alex apparently left his assigned area of work on the port side to go over to where the railings had been removed on the starboard side. While there, Alex Ralston fell from the vessel onto the dock suffering severe injuries.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue of fact for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir.1991). For purposes of this motion, reasonable doubts as to the existence of material facts are resolved against the moving party and inferences are drawn in the light most favorable to the opposing party. <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir.2000). Summary judgment is mandated where the facts and the law will reasonably support only one conclusion. <u>Heise v. Fishing Company of Alaska, Inc.</u>, 79 F.3d 903, 905 (9th Cir.1996).

ORDER - 3

**LONGSHORE & HARBOR WORKERS COMPENSATION ACT**

The Defendant urges the Court to find that Plaintiff Ralston cannot sustain a negligence claim and that his sole remedy is his receipt of benefits through the Longshore & Harbor Workers Compensation Act ("LHWCA"). Under the LHWCA an "injury" is defined as an accidental injury arising out of and in the course of employment."33 U.S.C. § 902(2). The LHWCA provides covered employees compensation for disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel). 33 U.S.C. § 903(a). Those individuals covered by the LHWCA include any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker. 33 U.S.C. § 902(3). Under the definitions of the LHWCA, Hoff acted in two capacities: first, as Alex Ralston's employer, 33 U.S.C. § 902(4), and second, as the owner of the vessel on which Alex was injured, 33 U.S.C. § 902(21). The LHWCA provides that as Plaintiff's employer, Hoff was required to pay Alex Ralston statutory compensation for injuries suffered in the course of his employment, regardless of fault. 33 U.S.C. § 904. An employer's no-fault liability for compensation to its employee is "exclusive and in place of all other liability." 33 U.S.C. § 905(a). Therefore, Plaintiff has no tort remedy against Hoff in his capacity as employer.

**A. Repairs or Routine Maintenance Under Section 905(b) of the LHWCA**

Seeking to avoid the exclusiveness of the employer's liability under the LHWCA, Plaintiff has instituted suit pursuant to 33 U.S.C. § 905(b), which allows employees to sue the owner of the vessel for negligence. Section 905(b) provides in pertinent part: "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, ... may bring an

ORDER - 4

action against such vessel.... *If such person was employed to provide* shipbuilding, *repairing*, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, *no such action shall be permitted*, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer." (Emphasis supplied). This provision provides that in dual-capacity situations where an employer is also a vessel owner, the owner of the vessel can be liable to its employees as if it were a third party for negligence in its vessel capacity. Gavatt v. City of New York, 226 F.3d 108, 111 (2nd Cir. 2000). The employee of a dual-capacity employer-owner has a right to sue the vessel for negligence. Id, at 119; Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 530 (1983). The vessel's liability is to be based on its own liability, and not that of the employer. Gavatt, at 117.

Section 905(b) allows an employee covered by the LHWCA to sue a vessel whose negligence injures the employee, yet contains an express exclusion for all such negligence actions against vessels where (1) the employee was hired to provide shipbuilding, repairing, or breaking services, and (2) the employer was the "owner, owner pro hac vice, agent, operator, or charterer of the vessel. 33 U.S.C. § 905(b); Heise v. Fishing Co. of Alaska, Inc., 79 F.3d 903, 907 (9th Cir. 1996).

The Defendant asserts that Alex Ralston was "employed to provide repairing services" and thus, is barred from maintaining a negligence action. The Plaintiff disputes his classification as a ship repairer, asserting instead that his employment to prep for painting was in the nature of "routine maintenance" and thus, he may maintain an action in negligence.

In Heise, the Ninth Circuit noted that "[we have not previously considered when an employee 'was employed to provide ...repairing ...services' for § 905(b) purposes, but a number of Fifth Circuit decisions have addressed that question." Heise, at 907. The court then considered and adopted the

Fifth Circuit definition for repair. "[R]epair in § 905(b) must be given its ordinary meaning, to

ORDER - 5

restore to a sound or healthy state.  If a worker is hired to restore a vessel to safe operating condition, he has been hired to perform repairing services under § 905(b).  If, however, he is hired to preserve the vessel's current condition, he is performing routine maintenance not covered by the section." Heise, at 907-08.  See,  New v. Associated Painting Services, Inc., 863 F.2d 1205, 1210 (5th Cir. 1989).  The court in Heise held summary judgment was proper for the defendant as Heise did not raise a genuine issue of material fact to support the claim he was employed to provide routine maintenance.  Although plaintiff was not preforming repair work at the time of his accident and he testified that he performed a multitude of jobs and the work that was fundamentally year-end maintenance, it was clear to the court that he was hired to assist in restoring the vessel to safe operating condition, rather than to preserve her current condition.  The work to be performed included rebuilding the engines and welding cracks in the fuel tanks; work characterized as a major overhaul.  The court concluded that this employment was "indisputably ship-repair" and thus, his negligence claim was barred.  Heise, at 908.

The Fifth Circuit in New found there existed a genuine issue of material fact whether the plaintiff was hired to do repair work or routine maintenance, precluding summary judgment.  The defendant asserted that sandblasting and paint work constituted repair under § 905(b) because the vessel had been at sea for many months, and "the paint on the entire vessel had severely deteriorated and various parts of the structure were rusty."   The court noted that there may be circumstances, perhaps rare, when *sandblasting and painting* constitute maintenance not covered by § 905(b).  In its motion for summary judgment, however, the defendant did not present such evidence, but relied on the uncontested fact that New was hired as a painter/sandblaster/foreman. New, at 1210.

The Fifth Circuit in Easley v. Southern Shipbuilding Corp., 936 F.2d 839, 843-845 (5th Cir.1991), held the plaintiff was a ship repairman as a matter of law.   As a mechanic who repaired

and maintained equipment used in the shipbuilding and repair process he supported those who

 ORDER - 6

actually built and repaired ships. Plaintiff's duties directly furthered the shipbuilding or ship repair process. Therefore, the court held he is a shipbuilder or repairer for purposes of the LHWCA.

Here, Alex Ralston was hired to prepare the ODYSSEY for painting.  Painting the vessel is an annual occurrence and considered to be routine maintenance on wooden vessels by the testifying shipwrights and the vessel owner, Hoff.  The Court is inclined to agree that under the circumstances of this case that such work is routine maintenance.  However, because the Court finds an independent basis to grant Defendant's motion for summary judgment, the Court declines to rule on this question.

**B.  Duty of Care Owed Under Section 905(b)**

The duties a ship owner owes to a longshoreman or repair worker under the LHWCA were originally established in Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156, 165 (1981).  The duties have been further defined, and summarized, in a number of cases interpreting Scindia, including Howlett v. Birkdale Shipping Co., 512 U.S. 92 (1994), Bjaranson v. Botelho Shipping Corp., Manila, 873 F.2d 1204, 1207-1208 (9th Cir.1989), Torres v. Johnson Lines, 932 F.2d 748, 750 (9th Cir.1991); and Taylor v. Moram Agencies, 739 F.2d 1384 (9th Cir.1984). According to Scindia and its progeny, a vessel owner's duty is divided into six categories. These duties are breached if and when a vessel owner: (1) Fails to turnover a reasonably safe vessel, equipment, and work space so a reasonably competent worker can safely perform his tasks (turnover duty of safe conditions); (2) Fails to warn the ship repair worker of non-obvious hazardous conditions (turnover duty to warn); (3) Actively involves itself in repair work and negligently injures a ship worker or repairman (active involvement duty); (4) Fails to exercise due care to avoid exposing ship workers to harm from hazards they may encounter in areas, or from equipment under the active control of the vessel during the work (active control duty); (5) Fails to intervene and correct a condition posing an unreasonable risk or harm when the vessel owner had actual knowledge of the danger and knows he cannot rely on the ship worker to correct the situation

ORDER - 7

(duty to intervene); and (6) Fails to discover dangerous conditions that develop within the confines of the ship repairman's work if imposed by contract, positive law, or custom (duty to supervise and inspect). See Torres 932 F.2d at 750-751; Bjaranson, 873 F.2d at 1207-1208. Although Scindia defined the vessel's duty of care in the context of the traditional arrangement of stevedoring operations involving the triangular relationship of vessel, independent stevedore-employer, and longshoreman employee, the lower federal courts have applied Scindia to other harbor-workers who work on board vessels as well. See, Cook v. Exxon Shipping Co., 762 F.2d 750, 752 (9th Cir.1985); Teply v. Mobil Oil Corp., 859 F.2d 375, 377 (5th Cir.1988).

Here, Plaintiff argues that Hoff breached the turnover duty of safe conditions, the active control duty and the duty to intervene. The Defendant, in response, argues that the Plaintiff has failed to set forth any evidence demonstrating that defendant breached these duties. As set forth below, the Court agrees with Defendant that Plaintiff has failed to raise a genuine issue of material fact that would support vessel owner liability under any of these duties.

**1. Turnover duty of safe conditions**

The turnover duty of safe condition was described by the Scindia court as follows: "[The vessel must exercise] ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property." Scindia, at 167. This duty does not require that a vessel owner turn over the vessel in a perfectly safe condition. See Bjaranson, at 1207-1208. The vessel must exercise ordinary care in light of the fact that the operation will be conducted by an "expert and experienced" worker or repair person. This implies that certain dangers that may be hazardous to unskilled persons need not be remedied if an expert and experienced worker could safely work around them. See Bjaranson, at 1208 (determining that the explicit references in Scindia and the cases cited by Scindia to dangers remaining aboard ship

ORDER - 8

"indicates that a shipowner may leave unremedied conditions that would otherwise be considered unreasonably dangerous to less skilled persons.")  In order to prove that this duty was breached, therefore, a plaintiff must introduce evidence that the hazard was "such that an expert and experienced stevedore would not 'be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property.' " Id.

In Bjaranson, a longshoreman sued a vessel owner under Section 905(b) for breach of the turnover duty of safe condition. The longshoreman had been injured when attempting to descend from a hatch cover to the deck, eight feet below.  He reached in the darkness for a 'coaming ladder' without handholds that ended two or three feet short of the hatch cover.  Finding nothing to hold onto, he fell to the deck. Bjaranson, at 1205-06.  Bjaranson had been using the ladder instead of the primary passageway because the primary hatchway was blocked by the legs of a crane. Id. at 1205. The court held  "the evidence ... supports the conclusion that an expert and experienced stevedore could have safely conducted the cargo operation." Id. at 1208.  The evidence relied upon to reach this conclusion was testimony that the crane could have been moved upon request and that there were alternative means of moving between hatches other than by using the ladder. Id.  The court stated "it is apparent that all that was required to eliminate in its entirety any arguable hazard was movement of the crane.  Such circumstances cannot give rise to a breach of the duty of safe condition." Id.

A claim of breach of the turnover duty of safe conditions was found wanting in Ludwig v. Pan Ocean Shipping Co., 941 F.2d 849 (9th Cir. 1991).  In that case a longshoreman was injured when he stepped down from a ladder onto a coiled cable.  Although the conditions posed an obvious hazard, the plaintiff stated he had momentarily forgotten its presence.  The court reasoned: "A

longshoreman is an expert who is required to be mindful of hazards–not forgetful of them.  A shipowner is not required to anticipate the action or inaction of a careless stevedore." Id. at 852.

Here, Plaintiff has not satisfied his burden because he has failed to set forth evidence

ORDER - 9

demonstrating that an experienced ship worker could not, with the exercise of reasonable care, enter, exit, and do the preparatory work for painting. Not only was the condition obvious, there was no necessity that Plaintiff come in contact with the hazard in the course of his duties. Despite the express warnings of Hoff, the Plaintiff apparently strayed from the area of his work and entered the hazardous area. The evidence shows that Alex Ralston, in preforming his assigned task, could and would have avoided the hazardous condition. There is no genuine issue of material fact that there was a breach of the turnover duty of safe condition.

Plaintiff attempts to rely on regulations promulgated by the Occupational Safety and Health Administration (OSHA) and the U.S. Coast Guard to establish that Hoff breached this duty. Plaintiff's reliance on these regulations is unpersuasive, for several reasons. Case law has defined the turnover duty of safe conditions and set forth its parameters. See, e.g., Bjaranson, at 1207. Although OSHA and Coast Guard regulations may set forth various safety requirements, they neither define nor discuss what designs or conditions are safe or unsafe for a skilled worker exercising reasonable care. Next, the cited Coast Guard regulation addresses deck rails in relationship to passengers and crew. The removal of the railing was necessary to the vessel repairs. The work on the ODYSSEY could not be conducted without the absence of deck rails as described in the Coast Guard regulation. Finally, the cited OSHA standards only impose a duty on stevedores (employers), not vessel owners. Martinez v. Korea Shipping Corp., Ltd., 903 F.2d 606, 611 (9th Cir. 1990); Ollestad v. Greenville S.S. Corp., 738 F.2d 1049, 1052-53 (9th Cir. 1984). As previously noted, Hoff cannot be held liable for breach of a duty owed as an employer, the duty must be in the context of the vessel.

The regulations cited by Plaintiff do not do not establish a genuine issue of material fact as to the issue of whether Hoff breached the turnover duty of safe conditions. The hazardous condition on the ODYSSEY was obvious and located in an area of the vessel where ship repairs were being conducted. The Plaintiff's preparation work for painting did not require him to confront this danger

ORDER - 10

and he was specifically warned not to go into this area of the vessel. No genuine issues of fact support a claim of breach of the turnover duty of safe conditions.

**2. Active control duty**

Plaintiff argues Hoff breached the active control duty because Hoff maintained active control of the ODYSSEY yet did not require safeguards to protect Plaintiff while he was performing his work. The Court disagrees.

To trigger the active operations duty, the vessel must have substantially controlled or been in charge of (1) the area in which the hazard existed, (2) the instrumentality which caused the injury, or (3) the specific activities the stevedore undertook. Davis v. Portline Transportes Maritime Internacional, 16 F.3d 535, 540 (3rd Cir.1994). A vessel may be liable if it fails to exercise due care to avoid exposing a ship repair worker to harm from hazards he may encounter in areas, or from equipment, under the active control of the vessel. Bjaransom, at 1207. Although it is arguable that Hoff as vessel owner had active control over area where the hazard existed, there is no genuine issue of material fact that he failed to exercise due care to avoid exposing Plaintiff to harm from the hazardous condition on the vessel. Plaintiff's work did not require him to confront the hazard. Even though it was obvious and easily avoided by Plaintiff, he was, nonetheless, explicitly instructed not to go onto this area of the vessel. There is no evidence that Hoff failed to exercise due care to avoid exposing Alex Ralston to the hazardous condition. There exist no genuine issue of material fact that Hoff breached the active control duty.

**3. Duty to intervene**

Vessel owners owe longshoremen the duty to intervene if the owners (1) know of a hazardous condition; (2) realize or should have realized that the condition presents an unreasonable risk of harm to the longshoremen; (3) know that the stevedore has failed to remedy that situation; and (4) helped to create the hazard. Bjaranson, at 1207; Torres v. Johnson Lines, 932 F.2d 748, 750-51 (9th

ORDER - 11

Cir.1991); <u>Bandeen v. United Carriers (Pan.), Inc</u>. 712 F.2d 1336 (9th Cir.1983).  The vessel owner can rely on the stevedore's expert knowledge, including the stevedore's judgment that a condition, although dangerous, is safe enough to permit work to continue.  <u>Greenwood v. Societe Francaise De</u>, 111 F.3d 1239, 1249 (5th Cir.1997).  The vessel owner has a duty to intervene only when it has actual knowledge that the stevedore is using an unsafe practice which is creating a hazard because the stevedore intends to work in the face of the hazard and cannot be relied on to remedy it.  <u>Pimental v. LTD Canadian Pacific Bulk,</u> 965 F.2d 13, 15 (5th Cir.1992).

The owner's responsibility to intervene is narrow and requires something more than mere shipowner knowledge of a dangerous condition. <u>Carpenter v. Universal Star Shipping, S.A.</u> 924 F.2d 1539, 1543 (9th Cir. 1991).  In order to prevail, the longshoreman must show not only that the shipowner had actual knowledge of the defect and of the stevedore's continuing use of the defective item, but also (1) it had actual knowledge that the defect posed an unreasonable risk of harm and (2) actual knowledge that it could not rely on the stevedore to protect its employees and that if unremedied the condition posed a substantial risk of injury.  <u>Greenwood</u>, at 1248.

Plaintiff's evidence does not create an issue of material fact that the stevedore (ship repairmen) did not consider the condition dangerous, or that it created an unreasonable risk of harm to them or their operations. The repairmen and Hoff, as vessel owner, understood that Plaintiff would not be exposed to the hazardous condition.  Plaintiff was not "to work in the face of the hazard."  There is no evidence that Hoff should have thought otherwise.  There is no genuine issue of fact supporting a claim of breach of the duty to intervene.

**CONCLUSION**

For the reasons set forth above, Defendant San Juan Excursions, Inc. is entitled to summary judgment of Dismissal of Plaintiff's claims in their entirety.

ACCORDINGLY,

ORDER - 12

IT IS ORDERED:

1. Defendant San Juan Excursions, Inc.'s Motion for Summary Judgment [Dkt. # 12 & 17] is GRANTED, and this case dismissed in its entirety.

2. Defendant's Motion to Continue Discovery Cutoff [Dkt. # 22] is stricken as MOOT.

DATED this 9th day of February, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 13